United States Courts
Southern District of Texas
FILED

JUN 29 2026

Nathan Ochsner, Clerk of Court

## IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

|  |  |  |
|---|---|---|
| Morris Williams, *Plaintiff,* | § § § § | |
| | § § | Civil Action No: 4:26-cv-03269 |
| *v.* | § § | |
| | § | |
| Trans Union, LLC, and Experian Information Solutions, Inc., *Defendant.* | § § § § | **Demand For a Jury Trial** |

### SUMMARY OF THE CASE

This case concerns Defendants' systemic practice of withholding information Congress requires them to disclose under 15 U.S.C. §1681g(a)(1)–(2) of the FCRA. Plaintiff requested his consumer file. Defendants possessed complete account numbers, payment histories, dates of first delinquency, balance histories, and source information, but intentionally suppressed this information in consumer disclosures while providing full, unmasked, fully sourced data to paying third-party subscribers.

### PLAINTIFF'S AMENDED COMPLAINT

Plaintiff Morris Williams ("Plaintiff"), appearing *pro se*, now files his ***Amended Complaint*** against Defendants Trans Union, LLC ("Trans Union" or "Defendant") and Experian Information Solutions, Inc ("Experian" or "Defendant") for willful violations of the Fair Credit Reporting Act ("**FCRA**"), *15 U.S.C. § 1681g(a)(1)*. In support thereof, Plaintiff states as follows:

## A. INTRODUCTION

1.    This is an action for actual, statutory, and punitive damages for violations of the Fair Credit Reporting Act ("FCRA"), *15 U.S.C. § 1681 et seq.*, arising from failure to provide a clear and accurate "file disclosure" upon Plaintiff's request, as required by *15 U.S.C. § 1681g(a)*.

2.    The FCRA regulates consumer reporting.[1] Congress enacted the statute "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy."[2] One of the problems with the credit reporting industry that *Congress recognized* and *sought to remedy* with the FCRA was that a consumer *"is not always given access to the information in [their] file"*.[3]

3.    Consumers have a right to see the information consumer reporting agencies keep about them in their files at any time.

4.    The FCRA also promotes transparency of the credit reporting system to consumers in many ways, including by generally requiring that consumer reporting agencies disclose to consumers all information in their file upon request.

5.    Disclosure of the information in a consumer's file upon request is a critical component of the FCRA's carefully calibrated dispute provisions.

---

[1] *See* 15 U.S.C. 1681-1681x.

[2] Safeco Ins. Co. of Am. v. Barr, 551 U.S. 47, 52 (2007); see also 15 U.S.C. 1681 (recognizing "a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy"); S. Rep. No. 91-517, at 1 (1969) (noting that purpose of the statute is, in part, to "prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in a credit report" and to "prevent an undue invasion of the individual's right of privacy in the collection and dissemination of credit information").

[3] S. Rep. No. 91-517, at 3 (1969) (noting, as an example of this problem, that "[i]nsurance reporting firms generally do not admit to making a report on an individual and ordinarily will not reveal the contents of their file to [them]. Credit bureaus sometimes build roadblocks in the path of the consumer."). When introducing the bill that would become the FCRA, Senator Proxmire stated that "[m]any credit reporting agencies refuse to show consumers their files possibly out of fear of litigation and partly to protect its information sources." 115 Cong. Rec. 2412 (1969).

6.      One primary purpose of the disclosure requirements in [§] 1681g is 'to allow consumers to identify inaccurate information in their credit files and correct this information via the grievance procedure established under [§] 1681i.'" *Brown v. Equifax Info. Servs., LLC*, No. 1:09-CV-0168-CAM-LTW, 2010 WL 11647403, at *10 (N.D. Ga. Feb. 16, 2010) (quoting Gillespie, 484 F.3d 938, 941 (7th Cir. 2007)). The Defendants' omissions hinder the Plaintiff's ability to verify the items of information and dispute potential inaccuracies.

7.      Therefore, § 1681g(a) file disclosure requirements are central to the statute's accuracy, fairness, and privacy purposes.

8.      Section 1681g(a)(1) requires CRAs to "clearly and accurately disclose to the consumer all information in the consumer's file at the time of the request." Congress defined "file" broadly to include *all* information recorded and retained by a CRA, regardless of format. See 15 U.S.C. §1681a(g).

9.      Section 1681g(a)(2) requires CRAs to disclose "the sources of the information" in the consumer's file. The CFPB has clarified that "sources" is plural and includes the original furnisher, intermediaries, vendors, data brokers, and any entity in the chain of custody.

10,     The CFPB's 2024 Advisory Opinion and 2025 *Arora v Trans Union* amicus brief states that §1681g(a)(1)–(2) are unambiguous and require full disclosure of all information and all sources.

### B.  JURISDICTION AND VENUE

11.     Federal courts have original jurisdiction over FCRA claims because the statute arises under federal law *(15 U.S.C. § 1681 et seq).* This satisfies the federal question requirement under *28 U.S.C. § 1331.*

12.    Venue is proper here under **28 U.S.C. § 1391(b)** because the Defendant transacts business in Harris County, Texas, where the acts complained of were committed and caused by the defendant.

## C. PARTIES

13.    Plaintiff, Morris Williams, is a natural person residing in Montgomery County, Texas.

14.    Plaintiff is a consumer as defined by *15 U.S.C § 1681 a(c)* of the FCRA.

15.    Trans Union, LLC, is a Delaware Limited Liability Company whose principal address is located at 555 W Adams Street Fl-1, Chicago, IL 60661.

16.    Experian Information Solutions, Inc is incorporated in Ohio whose principal address is located at 475 Anton Blvd, Costa Mesa, CA 92626.

17.    The Defendants are nationwide consumer reporting agencies ("CRAs") as defined by *15 USC §1681a(f)* of the FCRA. The Defendants compile personal and financial information about individual consumers to create consumer reports and then sell those reports for use by entities that request information about the creditworthiness of individual consumers.

18.    The Defendants are registered to conduct business in the state of Texas and can be contacted through their registered agents.

## D. GENERAL ALLEGATIONS
### *Plaintiff's November 2025 and March 2026 Consumer "file disclosures"*

19.    On November 19, 2025 and March 31, 2026, Plaintiff requested electronic copies of his consumer file ("file disclosure") from the Defendants through the centralized source website, **www.annualcreditreport.com.**

20. Under the FCRA, "[e]very consumer reporting agency shall, upon request. . . clearly and accurately disclose to the consumer. . . [a]ll information in the consumer's file at the time of the request." *See 15 U.S.C. § 1681g(a)(1)*. "The term 'file', when used in connection with information on any consumer, means all the information on that consumer recorded and retained by a consumer reporting agency regardless of how the information is stored." *See*. § 1681a(g).

21. Trans Union and Experian omitted critical account information and payment history in the "file disclosures" provided to the Plaintiff on November 19, 2025 and March 31, 2026 at his request for example:

    i. Full account numbers

    ii. Account type / classification

    iii. Date of first delinquency

    iv. Payment history

    v. Balance history

    vi. Duration terms

    vii. Recent payments

    viii. Estimated removal dates

    ix. Original creditor information

    x. Source information

    xi. Vendor / intermediary information

22. The Defendants omitted the full account number from the (*Credit Collection Service*) tradeline, account type or classification, first date of delinquency, and reported an inaccurate removal date. TransUnion and Experian omission of the account type is a critical

identifier, providing only generic labels such as **"Collection Agency."** This **omission** rendered the account confusing and made it impossible for Plaintiff to accurately verify and inspect the origin of the reported debt against his personal records. The Equifax Automated Consumer Dispute Verification (ACDV) form proves the CRAs possessed the full account numbers omitted in the file disclosures provided to the plaintiff.[4]

23.　In the file disclosures provided to the Plaintiff, the Defendants failed to include the complete account number, balance history, and payment history for the (***Regions Bank***) tradeline.

24.　Defendants possessed the information they withheld from Plaintiff. Furnishers transmitted complete account numbers, payment histories, dates of first delinquency, balance histories, and source information through Metro 2 and ACDV systems. The Equifax ACDV form confirms that the full account number and account-level details existed in Defendants' systems at the time Plaintiff requested his file. Defendants' suppression of this information was therefore intentional, not inadvertent.

25.　Plaintiff did not request truncation or masking of any identifiers. Defendants later claimed that account numbers were truncated *"for security purposes,"* but this justification is pretextual because Defendants never disclosed that Plaintiff did not request truncation, and the FCRA does not authorize unilateral truncation absent a consumer request.

26.　The furnishers provided the defendants with complete account numbers; however, the defendants chose to scramble or truncate this data when providing the Plaintiff with a

---

[4] See *attached hereto as* **Exhibit A** "The Trans Union disclosure provided the first four digits of the Credit Collection Ser's account number, Experian's disclosure provided the first 6 digits of the Credit Collection Ser's account number, and Equifax's disclosure provided that last 4 digits of the Credit Collection Ser's account number." The Equifax ACDV form proves possession of the full account number furnished by Credit Collection Services.

sanitized, consumer-facing disclosure that omitted information they retained internally and furnished to third-party creditors.  See **Exhibit A**

27.    While Defendants include complete, unredacted data sets in reports sold to third-party creditors for profit, they systematically exclude and omit that same data from consumer disclosures, creating a state of information asymmetry. This practice ensures that creditors possess a more comprehensive view of the Plaintiff's legal reputation than the Plaintiff is permitted to see, directly obstructing his right to self-correction under *15 U.S.C. § 1681g.*

28.    Defendants' omissions were not isolated errors but the result of systemic policies designed to suppress information in consumer disclosures. These practices include:

   a.   truncating or scrambling account numbers;

   b.   suppressing payment histories and balance histories;

   c.   omitting dates of first delinquency;

   d.   replacing source names with internal numeric codes;

   e.   withholding vendor and intermediary information;

   f.   masking identifiers that appear in reports sold to third-party creditors.

29.    These practices create intentional information asymmetry: The Defendants provide complete and unmasked data to paying subscribers "end users" while withholding the same information from consumers. This practice increases the commercial value of Defendants' products and demonstrates willful disregard for §1681g.

30.    The Plaintiff has a legal right to see [**all** the information] at any time upon his request. A right granted to consumers by Congress.

31.    The Plaintiff suffered significant harm when he was unable to obtain all of the information in his consumer files upon request. The Defendants denial of information to which the Plaintiff has a legal right has been recognized a *"concrete injury in fact."*

32.    Without access to all the information, the Plaintiff was unable to take the initial steps to dispute inaccurate information and improve his credit profile. Making the experience very challenging, confusing, and time consuming for the Plaintiff.

33.    As a result of the Defendants' actions, the Plaintiff has suffered substantial damages, including great frustration, confusion, wasted time, and emotional distress when trying to understand what the information in his file disclosures meant and then attempting to correct the inaccurate information. The omissions made the verification and dispute process very difficult. The Defendants' failure to disclose the sources of the information in plain English further prevented Plaintiff from determining the accuracy of the data or contacting the correct furnisher to dispute it.

34.    In addition to omitting information required under § 1681g(a)(1), Defendants also violated § 1681g(a)(2) by failing to "clearly and accurately disclose to the consumer the sources of the information" contained in Plaintiff's consumer file.

35.    Plaintiff's Experian and TransUnion disclosures contained **no source information** for any item in his file, including but not limited to: names, addresses, phone numbers, Social Security numbers, account information, payment history, balance history, date of first delinquency, and inquiry information.

36.    Instead of identifying the actual source of each item of information, Experian used **cryptic internal numeric codes in the names and address section**, such as "Name ID #2973," "Name ID #42," "Name ID #18532," and "Address ID #0083424169," none of

which identify the actual furnisher or source of the information. Failure to adequately disclose "in plain English" the sources has deprived Plaintiff of the ability to determine [the information's] accuracy or "dispute inaccurate information.

37.    These numeric codes are **not intelligible to the average consumer**, and they do not disclose the identity of the furnisher, creditor, data broker, or other entity that supplied the information. As a result, Plaintiff was deprived of the ability to determine the accuracy of the information or contact the correct source to dispute it.

38.    Federal courts have held that the use of such cryptic numeric codes violates § 1681g(a)(2) because the statute requires disclosure of the **actual source** in **plain English**, not internal database identifiers. See, e.g., *Slyzko v. Experian*, No. 2:19-cv-00176 (D. Nev. Mar. 23, 2020); *Mintun v. Experian*, No. 2:19-cv-00033 (D. Nev. Mar. 23, 2020).

39.    Plaintiff never received any disclosure identifying the actual sources of the information in his file, including the sources of his names, addresses, phone numbers, social security number, or the furnishers of any tradeline or inquiry. This failure violated § 1681g(a)(2).

40.    Because Plaintiff could not identify the source of the information, he was unable to verify the accuracy of the data or dispute it with the correct furnisher, causing frustration, confusion, wasted time, and emotional distress.

### E.  COUNTABLE VIOLATIONS UNDER §1681g(a)(1) AND (a)(2)

41.    Defendants committed numerous violations of §1681g(a)(1) by failing to disclose multiple categories of information that Congress requires to be included in a consumer's file disclosure. These violations include the omission of full account numbers, the omission of account type and classification information, duration terms, the omission of the date of first

delinquency, and the omission of complete payment history and balance history. Defendants also failed to disclose scheduled payments, recent payments, estimated removal dates, original creditor information, and vendor or intermediary information. Each of these omissions constitutes a separate violation of §1681g(a)(1) because each category of information is independently required to be disclosed under the statute.

42.     Defendants also committed numerous violations of §1681g(a)(2) by failing to clearly and accurately disclose the sources of the information contained in Plaintiff's consumer file. Defendants failed to disclose the sources of Plaintiff's names, addresses, phone numbers, Social Security number, employers, account information, payment history, balance history, dates of first delinquency, and inquiry information. Defendants further failed to disclose the intermediaries, vendors, and other entities in the chain of custody of the data, and instead used internal numeric codes in place of plain-English source names. Each failure to disclose a source constitutes a separate violation of §1681g(a)(2).

43.     Each statutory requirement imposed by §1681g(a)(1) and §1681g(a)(2) is independent, and courts have held that a CRA's failure to satisfy each requirement constitutes a separate violation for purposes of statutory damages under 15 U.S.C. §1681n(a)(1)(A). [5]

### F.  VIOLATIONS

#### *Violation–1 of 15 U.S.C. § 1681g(a)1*

44.     Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

45.     Trans Union and Experian violated *§ 1681g(a)(1)* of the FCRA by failing to clearly and accurately disclose to the Plaintiff "all information" in his consumer file at the time of the requests made on November 19, 2025.

---

[5] Any person who willfully fails to comply with **any requirement** imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to… **damages of not less than $100 and not more than $1,000.**

46.    The defendants omitted and excluded critical account information and payment history data from the Plaintiff at the time of his disclosure request. Therefore, Plaintiff's factual allegations have been recognized to sufficiently confer standing.

47.    Under the FCRA, the Defendants' was "obligated to disclose," upon Plaintiff's request, "information 'that might be furnished, or has been furnished, in a consumer report.'"[6]

48.    Trans Union and Experian acted with reckless disregard for their duties under the FCRA to provide the Plaintiff with clear and accurate disclosures upon request. Their conduct was therefore willful and intentionally performed.[7]

49.    The Defendants' conduct has caused the Plaintiff to experience great frustration and emotional distress.

### Violation–2 of 15 U.S.C. § 1681g(a)2

50.    Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

51.    Under 15 U.S.C. § 1681g(a)(2), every consumer reporting agency must, upon request, **"clearly and accurately disclose to the consumer the sources of the information"** contained in the consumer's file.

52.    Experian violated § 1681g(a)(2) by failing to disclose the actual *sources* of the information in Plaintiff's consumer file and instead providing only internal numeric codes, abbreviations, or no source information at all.

---

[6] See *Vaiano v. Experian Info. Sols. Inc.*, 2025 WL 2323521, at *3 (D. Mass. Aug. 12, 2025) (internal quotation marks omitted) (quoting *Foskaris v. Experian Info. Sols., Inc.*, 808 F. App'x 436, 439 (9th Cir. 2020)).

[7] See *Tailford v Experian Info. Sols. Inc.*, 25 F. 4th 892, 896 (9th Cir. 2022") (" the disclosure and summary-of-rights requirements are designed to protect consumers' interests in learning of any inaccuracies in their credit files so that they can promptly correct the files before they are disseminated to third parties.")

53.    Experian's disclosures did not identify the furnishers of Plaintiff's names, addresses, phone numbers, SSN, account information, payment history, balance history, date of first delinquency, or inquiry information.

54.    The use of cryptic numeric codes such as "Name ID #2973" and "Address ID #0083424169" does not satisfy § 1681g(a)(2)'s requirement of a clear and accurate disclosure of the **actual source** of the information.

55.    Experian's failure to disclose the sources of the information prevented Plaintiff from determining the accuracy of the information and from contacting the correct furnisher to dispute inaccuracies, causing Plaintiff concrete informational injury, frustration, confusion, and emotional distress.

56.    Experian's conduct was willful because they knowingly use internal codes instead of plain-English source names, despite multiple federal court decisions holding that such practices violate § 1681g(a)(2).

57.    Plaintiff is therefore entitled to statutory damages, punitive damages, actual damages, and costs under 15 U.S.C. §§ 1681n and 1681o.

58.    In addition to Experian's violations, Plaintiff further alleges that Trans Union also violated 15 U.S.C. §1681g(a)(2) by failing to disclose the actual sources of the information contained in Plaintiff's consumer file. Plaintiff's Trans Union disclosures contained **no sources of information for any item in his file,** including but not limited to: names, addresses, phone numbers, employers, account information, payment history, balance history, date of first delinquency, and inquiry information.

59. Trans Union disclosed **zero sources** for **fifty-four (54)** separate items of information, including nineteen (19) addresses, twenty (20) phone numbers, eight (8) employers, three (3) accounts, and multiple hard and soft inquiries.

60. The CFPB's 2024 Advisory Opinion and its 2025 *Arora* amicus brief make clear that §1681g(a)(2) requires disclosure of **"the original source and all other sources,"** including intermediaries, vendors, and record-keepers. Trans Union's disclosure omitted this information entirely.

61. After the 2024 CFPB's advisory opinion Trans Union's systemic suppression of source information demonstrates that it **possessed** the source data but **intentionally withheld** it from Plaintiff. This constitutes willful non-compliance under 15 U.S.C. §1681n.

62. Plaintiff further states that Experian committed **at least sixty-two (62)** separate violations of §1681g(a)(2) by failing to disclose the chain of sources for each item of information in Plaintiff's file. Experian's March 31, 2026 disclosure contained six (6) names, nineteen (19) addresses, three (3) phone numbers, four (4) accounts, and over thirty (30) soft inquiries, yet Experian disclosed **no original source, no intermediary, no vendor, and no record-keeper** for any item.

63. The CFPB has clarified that "sources" is plural and includes **all links in the chain of custody** of the data. Experian's use of internal numeric codes such as "Name ID #2973" and "Address ID #0083424169" does not identify the actual furnisher or vendor and therefore violates §1681g(a)(2).

64. Experian's failure to disclose the chain of sources prevented Plaintiff from determining the accuracy of the information or contacting the correct furnisher, causing informational injury, frustration, confusion, and emotional distress.

65.     The violations committed by both Defendants were willful. The CFPB's 2024 Advisory Opinion and its 2025 *Arora v. Trans Union* amicus brief state that the requirements of §1681g(a)(1) and §1681g(a)(2) are **unambiguous**, and that CRAs must disclose **all information in the file** and **all sources of that information**, including intermediaries and vendors.[8] Defendants' systemic policies of masking, truncating, scrambling, and suppressing information demonstrate reckless disregard for clearly established statutory duties.

66.     As a result of Defendants' combined one-hundred-plus willful violations of §1681g(a)(1) and §1681g(a)(2), Plaintiff is entitled to statutory damages of up to $1,000 per violation under 15 U.S.C. §1681n(a)(1)(A), as well as punitive damages under §1681n(a)(2). Defendants' conduct caused Plaintiff concrete informational injury, emotional distress, frustration, confusion, and wasted time.

67.     Each omission of information required under §1681g(a)(1) and each failure to disclose a source required under §1681g(a)(2) constitutes a **separate and independent violation** of the FCRA. Courts interpreting §1681n(a)(1)(A) have held that statutory damages apply **per violation**, not per disclosure. Defendants' failure to disclose dozens of items of information and dozens of sources therefore gives rise to dozens of independent statutory violations.

68.     Defendants knowingly provide complete, unmasked, untruncated, and fully sourced data to third-party creditors, lenders, insurers, and other paying subscribers, while simultaneously withholding that same information from consumers in their §1681g disclosures. This intentional information asymmetry demonstrates willfulness because

---

[8] Consumer Financial Protection Bureau, Amicus Brief, *Arora v. Trans Union LLC*, No. 1:23-cv-01823 (N.D. Ill. filed Apr. 5, 2024), available at
https://www.consumerfinance.gov/compliance/amicus/briefs/arora-v-trans-union-llc/.

Defendants possess the information, use it for profit, and selectively suppress it only when responding to consumer file requests.

69.     Defendants' violations were not isolated or inadvertent. The omissions in Plaintiff's disclosures reflect **systemic, policy-level practices** of masking account numbers, suppressing source information, truncating identifiers, and replacing source names with internal codes. These practices are applied uniformly to millions of consumers and therefore constitute willful, reckless disregard for clearly established statutory duties under §1681g(a)(1) and §1681g(a)(2).

70.     Defendants' conduct was willful because they financially benefit from withholding information from consumers. Defendants provide complete, unmasked, fully sourced data to paying subscribers—such as lenders, insurers, debt buyers, and other commercial users—while intentionally suppressing that same information in consumer disclosures. This practice increases the value of Defendants' commercial products by ensuring that third-party purchasers receive more complete data than consumers themselves. Defendants' profit-driven decision to limit consumer access to information they are legally entitled to under §1681g(a) demonstrates willful, reckless disregard for the statute's transparency requirements.

71.     Defendants' violations were willful because the Consumer Financial Protection Bureau has repeatedly warned consumer reporting agencies—through advisory opinions, amicus briefs, supervisory guidance, and enforcement actions—that §1681g(a)(1) and §1681g(a)(2) require disclosure of *all* information in the file and *all* sources of that information, including intermediaries and vendors. The CFPB's 2024 Advisory Opinion

expressly states that the statute is "unambiguous,"[9] and its 2025 *Arora v Trans Union* amicus brief reiterates that CRAs must disclose the original source and all other sources. Despite these clear warnings, Defendants continued their systemic practices of masking, truncating, and suppressing information, demonstrating reckless disregard for well-established statutory duties.

72.     Plaintiff has Article III standing because Defendants' withholding of information to which Plaintiff is legally entitled under §1681g(a)(1) and §1681g(a)(2) constitutes a concrete **informational injury**. The Supreme Court has repeatedly held that when a statute grants individuals a right to receive specific information, the denial of that information is itself a concrete injury. See *TransUnion LLC v. Ramirez*, 594 U.S. 413, 440–41 (2021) (recognizing informational injury where a plaintiff is denied statutorily required disclosures); *FEC v. Akins*, 524 U.S. 11, 21 (1998); *Public Citizen v. DOJ*, 491 U.S. 440, 449 (1989). Here, Defendants denied Plaintiff access to information Congress required CRAs to disclose—namely, **all information in the file** and **all sources of that information**. This statutory denial impaired Plaintiff's ability to verify the accuracy of his file, initiate disputes, and exercise his rights under §1681i, thereby satisfying the injury-in-fact requirement for Article III standing.

## G. REQUEST FOR RELIEF

Plaintiff respectfully requests that the Court enter judgment in his favor and:

   a. Declare that Trans Union and Experian violated the FCRA 15 U.S.C. §§ 1681g(a)1 and 1681g(a)2;

---

[9] Consumer Financial Protection Bureau, *Fair Credit Reporting; File Disclosure*, Final Rule, available at https://www.consumerfinance.gov/rules-policy/final-rules/fair-credit-reporting-file-disclosure/.

b.  Award statutory damages up to $1,000 per violation pursuant to 15 U.S.C. § 1681n(a)(1);

c.  Award punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

d.  Award actual damages pursuant to 15 U.S.C. § 1681o(a)(1), including emotional distress and credit reputational harm;

e.  Award costs and such other relief as the Court deems just and proper.

Plaintiff respectfully requests that the Court grant all relief to which he is entitled under law.

## H. DEMAND FOR A JURY TRIAL

73.  Plaintiff demands a trial by jury on all issues so triable.

*Respectfully Submitted by,*

**Date:** June 26, 2026

/s/ *Morris Williams*
**Morris Williams**
9311 FM 1488 30-111
Magnolia, TX 77354
*Email:* **travell2003@yahoo.com**

## I.  VERIFICATION CLAUSE PURSUANT TO *28 U.S.C. § 1746*

I, ("Morris Williams") *declare* under penalty of perjury that the foregoing is true and correct and based on my personal knowledge.

*Morris Williams*

**EXECUTED** on June 26, 2026.

_____
*Plaintiff*

# EXHIBIT A

**COLLECTION**          **AUTOMATED CONSUMER DISPUTE VERIFICATION**          **EQUIFAX**

| Control Number | 99995353520349005 | | | Dispute 1 | [ 053 ] CONSUMER STATES INACCURATE INFORMATION. PROVIDE OR CONFIRM COMPLETE ID AND VERIFY ALL ACCOUNT INFORMATION. |
|---|---|---|---|---|---|
| Origin NCRA | EFX | Bureau Code | 9999 | | |
| Date Created | 12/19/2025 | Response Due | 01/10/2026 | Dispute 2 | |
| Subscriber Code | 178YC12959 | | | | |
| Account Number | 17071732 | | | FCRA Relevant Information | IMAGE ATTACHED |
| Grantor Name | The CCS Companies | | | | |
| Responder Name | BLEYMIN NUNEZ | | | | |
| Responder Phone | | Response Date | 12/30/2025 | | |
| Response Code | ☐ Verified As Reported | ☑ Cons Dispute not specific. Cons Info Verified. Acct Info Updtd | ☐ Delete Account | | ☐ Delete Fraud |

**Reported Consumer Identity**

| | | Same | **Modified Consumer Identity** | |
|---|---|---|---|---|
| Name | WILLIAMS MORRIS T | ☐ | Name | WILLIAMS MORRIS |
| AKA/FN | | ☐ | AKA/FN | |
| Address | ▮▮▮▮▮▮▮ | ☐ | Address | ▮▮▮▮▮▮▮ |
| Previous | ▮▮▮▮▮▮▮ | ☐ | Previous | |
| SSN | ▮▮▮▮ | ☑ | SSN | ▮▮▮▮ |
| DOB | ▮▮▮ | ☑ | DOB | ▮▮▮ |
| Phone | ▮▮▮ | ☐ | Phone | ▮▮▮ |

| Date Of Account Info | ECOA | Date Assigned | Collection Status | Narratives |
|---|---|---|---|---|
| | I | | | |
| 2025-12-30 | I | | D | |
| **Last Payment Date** | **Purge Key/DOFD** | **Original Amount** | **Current Balance** | |
| | 01/10/2026 | $359 | $359 | |
| | | $359 | $359 | [ 166 ] CONSUMER DISPUTES THIS ACCOUNT INFORMATION |
| **Original Creditor Name** | | **Creditor Classification** | | [ 057 ] COLLECTION ACCOUNT |
| PROGRESSIVE | | [ 06 ] INSURANCE | | |
| | | [ 06 ] | | |

| Consumer Info Indicator | |
|---|---|
| Compliance Condition Code | |
| | [ XB ] Account information disputed by consumer |
| Special Comment Code | |
| Account Status | [ D ] REFINANCED OR RENEWED |
| | [ 93 ] |
| Payment Rating | |

Prepared for:

# MORRIS T WILLIAMS



Date: November 19, 2025
Confirmation # 5323511597

## Collections

If you fall behind on payments, the lender or creditor may transfer your account to a collection agency or sell it to a debt buyer. This generally occurs a few months after you become delinquent, or the date you begin missing payments or not paying the full minimum payment.

A collection account may be reported to one, two, or all three of the nationwide credit reporting agencies (Equifax, Experian and TransUnion) and reflected on your credit reports. It can also have a negative impact on credit scores, depending on the credit scoring model (different ways credit scores are calculated).

Like other negative information, a collection account can remain on your credit reports for up to seven years from the date you first miss a payment to the original lender or creditor.

---

### CREDIT COLLECTIONS
725 Canton St, Norwood, MA  02062-2679 | (603) 570-4784
Account Number: *1732  Owner: **Individual Account**

| | | |
|---|---|---|
| Collection Reported: **11/11/2025** | Amount: **$359** | Original Creditor: **PROGRESSIVE** |
| Assigned: **08/25/2025** | Balance as of 11/11/2025: **$359** | Creditor Classification: **Insurance** |
| Date of 1st Delinquency: **06/21/2025** | Last Payment Date: **None** | Status as of 11/11/2025: **Unpaid** |

Additional Information: **None**

---

Annual Credit Report - Experian

| Date | Balance | Scheduled Payment | Paid |
|------|---------|-------------------|------|
| **Feb 2024** | **$0** | **$0** | **$0 on 1/3/2024** |
| **Jan 2024** | **$39** | **$25** | **$0** |

## Additional info

Between Oct 2024 and Oct 2025, your credit limit/high balance was $2,500

Between Jan 2024 and Sep 2024, your credit limit/high balance was $500



## Contact Info

Address        PO BOX 31293,
SALT LAKE CITY UT 84131

Phone Number        (800) 955-7070



## Comment

### Current:

Account previously in dispute - investigation complete, reported
by data furnisher

### Previous:

Account previously in dispute - investigation complete, reported
by data furnisher

Sep 2025 to Oct 2025

# CREDIT COLLECTION SERVIC

## POTENTIALLY NEGATIVE



## Account Info

| | |
|---|---|
| Account Name | **CREDIT COLLECTION SERVIC** |
| Account Number | **170717XX** |
| Account Type | **Collection** |
| Responsibility | **Individual** |
| Date Opened | **08/25/2025** |
| Status | **Collection account. $359 past due as of Nov 2025.** |
| Status Updated | **Aug 2025** |
| Balance | **$359** |
| Balance Updated | **11/18/2025** |

| | December 2024 | January 2025 | February 2025 | March 2025 | April 2025 | May 2025 |
|---|---|---|---|---|---|---|
| Balance | $120 | $93 | $80 | $67 | $53 | $0 |
| Past Due | $0 | $0 | $0 | $0 | $0 | $0 |
| Amount Paid | $0 | $30 | $15 | $15 | $15 | $53 |
| Scheduled Payment | $0 | $15 | $15 | $15 | $15 | - - - |
| Rating | OK | OK | OK | OK | OK | OK |

| | June 2025 | July 2025 | August 2025 | September 2025 | October 2025 |
|---|---|---|---|---|---|
| Balance | $91 | $93 | - - - | $98 | $100 |
| Past Due | $0 | $0 | - - - | $30 | $45 |
| Amount Paid | $0 | $0 | - - - | $0 | $0 |
| Scheduled Payment | $0 | $15 | - - - | $15 | $15 |
| Rating | OK | OK | 30 | 60 | 90 |

Total Month

**CREDIT COLLECTION SERVIC** 1707********

## Account Information

**Address**                                    P O BOX 607 NORWOOD, MA 02062

**Phone**                                                    (603) 570-4784

**Date Opened**                                              08/25/2025

**Responsibility**                                       Individual Account



**FEDERAL TRADE COMMISSION**
PROTECTING AMERICA'S CONSUMERS

# Advisory Opinion to Darcy (06-30-00)

June 30, 2000

Denise A. Darcy, Esq.

Asst. General Counsel

TRANS UNION

555 West Adams Street

Chicago, Illinois 60661

Dear Ms. Darcy:

This responds to your letter dated concerning whether the Fair Credit Reporting Act ("FCRA") allows Trans Union or another consumer reporting agency ("CRA"), for security purposes, to "truncate, scramble or mask the account number and social security number" when making file disclosures to consumers. You report that such a procedure has been recommended to you by a consumer who was recently the victim of account takeover fraud by a perpetrator who fraudulently procured the individual's Trans Union file by impersonating the consumer. You state: "While some creditors truncate or scramble the data before they supply it to us, not all do; therefore, many of the account numbers on our file are complete and accurate, and that is what we disclose to the consumer."

Section 609(a)(1) of the FCRA states that CRAs, including major credit bureaus such as Trans Union, "shall, upon request (by a consumer), clearly and accurately disclose to the consumer . . . *All information* in the consumer's file at the time of the request" (emphasis added). If the "information in the consumer's file at the time of the request" includes account and social security numbers, the provision thus normally requires that the CRA "clearly and accurately" include such items in its disclosure to consumers. However, because the trigger for a file disclosure is a "request" by a consumer, a CRA may allow consumers (such as the individual in your letter) to choose truncation or other security measures in their own file disclosure. In other words, although Section 609 provides consumers with a right to *all information* in the file, a CRA may provide a method for the consumer to ask for less than all information and then comply with that "request" when it makes the disclosure.

In sum, it is our view that a CRA that always scrambles or truncates account (or social security) numbers does not technically comply with Section 609 because it does not provide "accurate" (and perhaps not "clear") disclosure of "all information" in the file. However, if a consumer's "request" for a file disclosure is framed so as to allow some items in the file to be abbreviated or revised in that fashion, a CRA making such a disclosure would comply with Section 609.

The opinions set forth in this informal staff letter are not binding on the Commission.

Sincerely yours,

Clarke W. Brinckerhoff

# Field Definitions

## Base Segment

| FIELD | FIELD NAME & DESCRIPTION | 426 Character Format | | |
|---|---|---|---|---|
| | | Length | Position | Recording Technique |
| 3 | **Time Stamp**<br><br>Contains date and time of actual account information update.<br><br>Format for packed date is 0MMDDYYYYHHMMSSs — where s is the sign. Format is MMDDYYYYHHMMSS for character date. | 14 | 6-19 | N |
| 4 | **Reserved**<br>Zero fill.<br><br>Field formerly used for Correction Indicator. | 1 | 20 | N |
| 5 | **Identification Number**<br>Used to uniquely identify a data furnisher. Report your internal code to identify each branch, office, and/or credit central where information is verified. For accounts reported by servicers, the Identification Number should refer to the current holder of the note.<br><br>This number must be unique, at least 5 digits long, and should not include embedded blanks or special characters. ***Entire field should never be zero, blank or 9 filled.***<br><br>**This field must be consistent on a month-to-month basis to avoid duplication of information. Notify consumer reporting agencies before adding, deleting, or changing the identifiers in this field.** | 20 | 21-40 | AN |
| 6 | **Cycle Identifier**<br>Report the internal cycle code for this account. Field is required if reporting by cycles; otherwise blank fill. | 2 | 41-42 | AN |
| 7 | **Consumer Account Number**<br>Report the individual's complete and unique account number as extracted from your file. Do not include embedded blanks or special characters.<br><br>**Do not report the Social Security Number, in whole or in part, within the Consumer Account Number.**<br><br>Account numbers must be unique. Previously-reported account numbers should not be used again for credit reporting purposes.<br><br>Account number scrambling and encryption methods for security purposes are permitted. Contact the consumer reporting agencies for information regarding the Metro 2® scrambling techniques. | 30 | 43-72 | AN |

**F** US POSTAGE IMI 022760626142505 2000393293
$10.84
SSK
FCM

06/26/26   Mailed from 77381   028W2310264

# USPS FIRST-CLASS MAIL®

MORRIS  WILLIAMS
9311 FM 1488 30-111
MAGNOLIA TX  77354

4.60 oz

**RDC 99**

RETURN RECEIPT REQUESTED


United States Courts
Southern District of Texas
FILED


**JUN 2 9 2026**

Nathan Ochsner, Clerk of Court

SHIP
TO:

US DISTRICT COURT
515 RUSK ST. ROOM 5300
HOUSTON TX 77002

---

**USPS CERTIFIED MAIL®**

9507 1066 3456 6177 6359 84

